IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHAROD NICKELSON,

    Petitioner,

v.

CHAE HARRIS, WARDEN, LEBANON
CORRECTIONAL INSTITUTION,

    Respondent.

Case No. 2:19-cv-375
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ and the exhibits of the parties. For the reasons that follow, the Undersigned **RECOMMENDS** that this action be **DISMISSED**.

## I. Facts and Procedural History

Petitioner challenges his convictions in the Belmont County Court of Common Pleas on two counts of drug trafficking. The Ohio Seventh District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} Appellant rented a room at Comfort Inn in St. Clairsville. On October 14, 2015, hotel staff made various calls to law enforcement to report unusual activity; numerous cars coming in and out of the parking lot since Appellant's occupancy. They observed suspected drug trafficking from Appellant's room to cars in the parking lot of the hotel. (Tr. 51–52, 54; 2d Tr. 30, 36, 47, 52). For instance, Detective Starkey of the Martins Ferry Police Department received a call from the manager of the hotel in the afternoon. He advised her to record license plate numbers, watch the situation, and report whether the increased traffic in the parking lot continued. (Tr. 50–52). A few hours later, a hotel employee called the detective to report the traffic had increased while she watched the situation from surveillance video. (Tr. 53–54). The detective was unable to immediately take action, but he consulted with the assistant prosecutor and began preparing an affidavit for a search warrant. (Tr. 55, 70–71; 2d Tr. 54).

{¶ 3} The hotel staff did not ask Appellant to leave but eventually called 911. (Tr. 13, 58; 2d Tr. 34–35). They wanted the police to escort Appellant off the premises. (Tr. 48–49). Deputy Carpenter and Deputy Schwarck from the Belmont County Sheriff's Department responded to the call in separate vehicles. At the hotel, two hotel employees explained to the deputies what they observed, including two people repeatedly walking from Appellant's room to different vehicles that pulled into the parking lot. (Tr. 14, 94). The employees showed the deputies notes they had taken and video footage. (Tr. 14, 102).

{¶ 4} The hotel staff informed the deputies they wanted Appellant evicted and removed from the premises. (Tr. 16, 95, 102). Due to the suspected drug trafficking, the employees were fearful of approaching Appellant. (Tr. 16). The deputies asked for an employee to accompany them to the room, but both employees adamantly refused to do so and referred to a recent robbery at a nearby hotel. (Tr. 16–17, 89). The hotel employees gave the deputies a keycard to open Appellant's hotel room. (Tr. 17, 102).

{¶ 5} The deputies proceeded to Appellant's third floor room. Deputy Carpenter knocked multiple times, announcing he was with the sheriff's department and was there for the hotel staff. (Tr. 18–19). Deputy Schwarck testified they made it clear they were present to remove Appellant from the room at the request of hotel management. (Tr. 106). Deputy Carpenter noted his recent responses to overdose cases and his concern this could be such a case due to Appellant's failure to respond to the knocking. (Tr. 19).

{¶ 6} Deputy Carpenter used the room key and attempted to push the door open. The interior latch stopped the door from opening more than a few inches. (Tr. 20). Appellant voiced a sound, and the deputy asked him to open the door as they needed to talk to him. (Tr. 20). Appellant asked them to wait; the deputy said "okay" and reiterated why he was there. (Tr. 20). Appellant then noted he would not be able to release the interior latch with the door pressing on the latch. After the door was closed for a period, Deputy Carpenter knocked again.

{¶ 7} When there was no response, Deputy Carpenter pushed open the door but the interior latch was still in place. Appellant had moved to a place in the room where he could be seen through the crack. Deputy Carpenter observed Appellant holding a bag of pills which was illuminated by the light of Appellant's phone. (Tr. 21). The bag was actually the (tied-off) corner portion of a larger plastic bag (to form a "V" shape), which is commonly utilized to store narcotics. (Tr. 103–104). The deputy ordered Appellant to open the door, and Appellant asked him to "wait a minute" but did not then comply. Deputy Carpenter forced open the door with his shoulder. (Tr. 22–23). Appellant was still holding the bag of pills, which turned out to be a schedule II controlled substance containing oxycodone. (Tr. 22, 43). Appellant was arrested at approximately 9:10 p.m.

{¶ 8} When Detective Starkey was advised of Appellant's arrest, he consulted with the assistant prosecutor who advised him to submit his affidavit for the warrant without adding any new details. (Tr. 70–71). The detective's affidavit used to support the search warrant made reference only to what he was told by the hotel employees when they called him. (Tr. 64; 2d Tr. 63–64). The search warrant for Appellant's room at Comfort Inn was issued by a judge at 11:17 p.m. Among items discovered in Appellant's room at Comfort Inn were: two keycards for the room at Comfort Inn; two keycards for a room at another hotel; and $9,181. (Tr. 65). Due to the presence of room keys for another hotel, the police learned Appellant had simultaneously rented a room at the nearby Days Inn. (Tr. 66). The detective then obtained a search warrant for the room at Days Inn where cocaine was discovered.

{¶ 9} Appellant was indicted on two counts drug trafficking. Count one involved the cocaine (more than 100 grams) found in Appellant's hotel room at Days Inn. Count two involved the oxycodone pills (more than five times the bulk amount) Appellant was holding when police entered his hotel room at Comfort Inn. Appellant filed a motion to suppress, and a suppression hearing was conducted.

{¶ 10} On June 2, 2016, the trial court overruled the suppression motion. In pertinent part, the court ruled the hotel staff asked the officers to evict Appellant as they were too fearful to do so and a hotel guest loses his expectation of privacy upon eviction. In the alternative, the court found the independent source rule would validate the discovery of the evidence in the room at Comfort Inn as the first search warrant was based on evidence the detective-affiant learned from hotel employees prior to and independent of the warrantless entry by deputies.

{¶ 11} Subsequently, the trial court permitted Appellant to present additional evidence at a second suppression hearing. The original purpose of the hearing was to discuss an issue with video footage from the third floor hallway which was not preserved when the hotel provided video footage to law enforcement. At the hearing, the court permitted Appellant to delve into the prior issues as well. In a June 17, 2016 judgment entry, the court maintained its prior decision overruling the suppression motion. Appellant pled no contest to the charges and was thereafter sentenced.

{¶ 12} Appellant filed a timely notice of appeal upon the trial court's issuance of the June 24, 2016 sentencing entry. Appellant's brief was filed in December 2016. He raises one assignment of error addressing the suppression decision, which he divides into three parts: (1) whether the warrantless entry was lawful; (2) if not, whether the first search warrant satisfied the independent source rule; and (3) if both of these questions are answered in the negative and the evidence discovered in those searches is suppressed, the evidence discovered during the execution of the second search warrant must be suppressed as well. The state moved for an extension of time to file a brief, and the motion was granted, but the state did not then submit a brief.

ASSIGNMENT OF ERROR: SUPPRESSION

{¶ 13} Appellant's assignment of error provides:

"The Trial Court Erred When It Overruled Appellant's Motion to Suppress."

*State v. Nickelson*, 7th Dist. No. 16BE0039, 2017 WL 3951925, at *103 (Ohio Ct. App. Aug. 30, 2017). On August 30, 2017, the appellate court affirmed the judgment of the trial court. *Id*. On January 31, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Nickelson*, 151 Ohio St.3d 1514 (Ohio 2018).

On November 17, 2017, Petitioner filed a timely application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). In that application, Petitioner asserted that he was denied the effective assistance of appellate counsel because his attorney failed advance the following arguments on appeal: that the affidavit attached to the search warrant did not provide probable cause; that police unjustifiably evicted him from his hotel in violation of the Fourth Amendment; and that he was denied the effective assistance of trial counsel because his attorney failed to pursue and or use exculpatory evidence. *See State v. Nickelson*, 7th Dist. No. 16BE0039, 2018 WL 527972, at *1-6 (Ohio Ct. App. Jan. 19, 2018). Petitioner apparently did not file an appeal to the Ohio Supreme Court.

On January 30, 2019, Petitioner filed this habeas corpus petition. He asserts, as his sole claim for relief, that he was denied the effective assistance of appellate counsel because his attorney failed to properly litigate or preserve a claim under the Fourth Amendment. It is Respondent's position that Petitioner has procedurally defaulted this claim.

## II. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of

4

habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's

failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id*.

### III. Analysis

Petitioner asserts he was denied effective assistance of appellate counsel. However, Petitioner failed to file a timely appeal of the appellate court's January 2018 decision denying his Rule 26(B) application. Further, he may now no longer do so, as Ohio does not permit delayed appeals in Rule 26(B) proceedings. Ohio S. Ct. Prac. R. 7.01(A)(4)(c). The state courts were never given the opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default. Moreover, this Court has repeatedly held that the failure to file a timely appeal to the Ohio Supreme Court in Rule 26(B) proceedings constitutes a procedural

default of a claim of the denial of the effective assistance of appellate counsel. *See Teitelbaum v. Turner*, No. 2:17-cv-583, 2018 WL 2046456, at *21 (S.D. Ohio May 2, 2018) (citing *Davis v. Morgan*, No. 2:15-cv-00613, 2017 WL 56034, at *3 (S.D. Ohio Jan. 5, 2017) (citing *Wright v. Lazaroff*, 643 F.Supp.2d 971, 987-88, 994 (S.D. Ohio 2009); *Johnson v. Turner*, No. 2:14-cv-01908, 2016 WL 6963177, at *6 (S.D. Ohio Nov. 29, 2016); *Hudson v. Smith*, No. 2:09-cv-0030, 2010 WL 2671273, at *6 (S.D. Ohio June 30, 2010)). Thus, Petitioner has procedurally defaulted his claim of the denial of the effective assistance of appellate counsel. Petitioner has failed to establish cause and prejudice for his procedural default.

Moreover, Petitioner does not allege, and the record does not reflect, that he can establish his actual innocence so as to obtain a merits review of this claim based on a manifest miscarriage of justice. *See Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005).

## IV. Recommended Disposition

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE
